UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | Case No. 5:13-CV-05926-EJD |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT** |
| v. | |
| EFREN MUNOZ, et al., | |
| Defendants. | **[Re: Docket Item No. 17]** |

## I.   INTRODUCTION

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") markets and licenses commercial exhibitions of pay-per-view prizefight events and possessed the proprietary rights to exhibit and sublicense one particular program, namely "Ultimate Fighting Championship 155: Junior Dos Santos v. Cain Velasquez" (the "Event"), which was telecast on December 29, 2012.  In this action, Plaintiff alleges that Defendant Efren Munoz, doing business as Taqueria Mi Tierra and Taqueria Mi Tierra, Inc. (hereinafter "Defendant"), illegally intercepted and broadcasted the Event in Defendant's place of business. Presently before the Court is Plaintiff's application for default judgment.  See Docket Item No. 17.  That motion will be granted for the reasons explained below.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331 and personal jurisdiction arises from service on the Defendant in California.  Burnham v. Super. Ct., 495 U.S. 604, 610-11 (1990).

1

Plaintiff filed the Complaint on December 20, 2013. See Docket Item No. 1. Defendant failed to answer and default was entered by the Clerk on April 10, 2014. See Docket Item No. 16.

## II.     BACKGROUND

As noted, Plaintiff is a commercial distributor and licensor of sports events and possessed the exclusive nationwide commercial distribution rights to the Event. Dkt. No. 1 ¶ 16. In order for commercial establishments to broadcast the Event, owners were required to enter into a sublicense agreement with Plaintiff. Id. ¶ 17. This sublicense provided commercial establishments the right to publicly exhibit the Event. Id.

On December 29, 2012, investigator Nathan Tate viewed a broadcast of the Event at Defendant's commercial establishment, Taqueria Mi Tierra. Dkt. No. 17 at 2. Based on Tate's observation, Plaintiff alleges that Defendant displayed the Event without obtaining the proper license. Dkt. No. 1 ¶ 19.

According to Tate, Defendant was displaying an undercard event for the time he was at the establishment. Plaintiff also owned the rights to distribute those preliminary events. See Tate Affidavit, Docket Item No. 18 ¶ 9. Plaintiff cannot determine the means of signal transmission the Defendants used to display the Event. Dkt. No. 17 at 8. Tate states that Defendant broadcast the Event on two televisions, the establishment's capacity was 90 persons, three separate headcounts between 8:10 p.m. and 8:25 p.m. revealed that at the times of the headcount the number of patrons was 50, and Defendant did not require a cover charge to enter the establishments. Id. at 11; Dkt. No. 17-3. Tate states that there was no visible cable box, but a satellite was visible. Dkt. No. 17-3 at 2-3.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment, known commonly as the Eitel factors. They are:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

**IV. DISCUSSION**

### A. The Eitel Factors

Here, the Eitel factors weigh in favor of default judgment against Defendant. As to the first factor, denying Plaintiff's application for default judgment would make little sense since Defendant has refused to litigate this action. The Court would hear and review the same evidence it has before it now if Plaintiff was required to prove up its case. Thus, Plaintiff would be prejudiced in the form of further delay and expense if the Court were to deny the present application. This factor weighs in favor of default judgment.

As to the second and third factors, Plaintiff's substantive claims appear meritorious and the Complaint is sufficiently pled. Plaintiff has alleged that Defendant violated two sections of Title 47 and the alleged activities of Defendant appear to have violated at least one of those sections. Additionally, Plaintiff has stated relevant laws pursuant to which the court may provide relief. These factors also weigh in favor of default judgment.

As to the fourth factor, the damages in this case cannot exceed the amounts specified in 47 U.S.C. § 605 (for reasons more fully explained below), and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $100,000. See 47 U.S.C. § 605(e)(3)(C)(i)(II); 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff is seeking $950 in damages for conversion, or the amount Defendant would have been required to pay for the license. All things considered, the relatively small sum of damages weighs in favor of default judgment.

As to the fifth factor, there is no dispute of material fact. Indications that there is a dispute

3

of material fact can weigh against entry of default judgment. See Eitel, 782 F.2d at 1471-72. But here, Defendant has not disputed any of Plaintiff's contentions since Defendant failed to respond to either the Complaint or this motion, and all material facts pled in the Complaint are supported or explained by affidavit or declaration.

For the sixth factor, it is unlikely that default was the result of excusable neglect. This action was filed over seven months ago and the docket reveals that Defendant was properly noticed of this action by personal service. In addition, Defendant was served with a copy of the instant application. Defendant failed to respond despite these notifications. This factor, therefore, weighs in favor of default judgment.

Finally, the seventh factor weighs in favor of default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate." See J & J Sports Prods, Inc. v. Concepcion, No. 10-CV-05092, 2011 U.S. Dist. LEXIS 60607, at *5 (N.D. Cal. June 7, 2011). Thus, the general policy in favor of merits decisions is outweighed by the specific considerations made in this case. As such, this factor does not prevent entry of default judgment here.

**B. Calculation of Damages**

Plaintiff requests $10,000 in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II) and an unspecified amount in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff also seeks $950 in conversion damages.

**1. Statutory Violations**

Plaintiff requests $10,000 in statutory damages as a result of an alleged violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), which prohibits any person from receiving or transmitting "wire or radio" signals except through authorized channels. 47 U.S.C. § 605(a). More specifically, the statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming.'" J & J Sports Prods., Inc. v. Ro, No. 09-CV-02860, 2010 U.S. Dist. LEXIS 21425, at *7 (N.D. Cal. Feb. 19, 2010) (quoting J & J Sports Prods., Inc. v. Guzman, No. 08-CV-05469, 2009 U.S. Dist. LEXIS 32273, at *5 (N.D. Cal. Apr. 16, 2009)). The statute provides for statutory damages ranging from $1,000 to $10,000 for each violation. 47 U.S.C. §

605(e)(3)(C)(i)(II).

Plaintiff states that Defendant violated Section 605, but fails to state the actual means of signal transmission used, which is necessary to determine whether Plaintiff has sufficiently stated a claim pursuant to Section 605. Here, Plaintiff's investigator was unable to determine the exact means used by Defendant to intercept the Event, and Plaintiff provided no additional information on this subject beyond Tate's indefinite affidavit.

In that regard, the Court awards Plaintiff $1,000 in statutory damages. This amount is appropriate because, as noted, Plaintiff did not develop sufficient facts to justify any increase from the minimum award allowed under the statute. As in other cases filed in this district, Plaintiff's investigator failed to determine the means used to intercept the Event. Such a presentation - the result of a fifteen-minute investigation - certainly cannot support the maximum award requested by Plaintiff, or anything more than the minimum amount provided by the statute.

**2. Enhanced Damages**

Plaintiff also requests enhanced damages pursuant to Section 605(e)(3)(C)(ii). This section authorizes the Court to award up to $100,000, in its discretion, upon finding that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not set forth controlling factors for the determination of when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts. These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." Concepcion, 2011 U.S. Dist. LEXIS 60607, at *10. Enhanced damages have also been awarded when the defendant has violated sections 605 on previous occasions. See J & J Sports Prods., Inc. v. Paniagua, No. 10-CV-05141-LHK, 2011 U.S. Dist. LEXIS 33940, at *5-6 (N.D. Cal. Mar 21, 2011).

In this case, according to Plaintiff, Defendant did not charge a cover to patrons nor is there any evidence that Defendant increased prices or required food or drink purchases during the Event.

Two television sets displayed the event to 50 patrons. None of these facts suggest that commercial or private financial gain was Defendant's motivation in displaying the Event.

Therefore, the Court grants Plaintiff's request for enhanced damages, but concludes that an award of $950, the value of the commercial license to air the program, is more than adequate and just to compensate Plaintiff for lost profits and to deter future infringement.

### 3. Conversion

Plaintiff requests $950 in damages for the tort of conversion. See Cal. Civ. Code § 3336. "The elements of conversion are: 1) ownership of a right to possession of property; 2) wrongful dissolution of the property right of another; and 3) damages." Paniagua, 2011 U.S. Dist. LEXIS 33940, at *6. Damages for conversion are "based on the value of the property at the time of the conversion." Id.

Here, Plaintiff has shown that it owns the right to distribute the Event and has properly alleged the misappropriation of the right to distribute the program. As to damages, the "value of the property" was the value of the commercial license, or $950. Accordingly, the court awards Plaintiff $950 in damages for conversion.

## IV. ORDER

Based on the foregoing, Plaintiff's application for default judgment is GRANTED. Judgment shall be entered in favor of Plaintiff and against Defendant in the amount of $2,900.00 in total damages.

**IT IS SO ORDERED**

Dated: Aug. 20, 2014

_____
EDWARD J. DAVILA
United States District Judge